FILED

2022 Mar-17  PM 02:15
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

SELENA GENTRY,              )
                           )
          Plaintiff,        )
                           )
vs.                         )          4:20-cv-00747-LSC
                           )
SOCIAL SECURITY             )
ADMINISTRATION,             )
                           )
          Defendant.        )

**MEMORANDUM OF OPINION**

## I.    Introduction

The plaintiff, Selena Gentry ("Gentry" or "Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Ms. Gentry timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Gentry was 46 years old on the date she was last insured and 55 years old at the time of the Administrative Law Judge's ("ALJ's") decision. (*See* Tr. at 27, 29.) She has a high school education. (Tr. 170) Her past work experiences include stocker, cherry picker operator, building materials sales attendant, and cashier. (Tr.

at 1156.) Ms. Gentry claims that she became disabled on September 29, 2010, due to sciatica and tennis elbow. (Tr. 169.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440

F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e).  The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of her past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the plaintiff's impairment or combination of impairments does not prevent her from performing her past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can

make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find her not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g).  If the plaintiff cannot perform other work, the evaluator will find her disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found the plaintiff had not engaged in substantial gainful activity between September 29, 2010, and September 30, 2010. (Tr. 22.) According to the ALJ, Plaintiff's generalized anxiety disorder ("anxiety"), sciatica, and lateral epicondylitis right ("tennis elbow") are "severe impairments." (*Id.*) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 22-24) The ALJ determined the Plaintiff had the following RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) except for occasionally reaching in any direction with right dominant arm and occasionally handling and grasping with right dominant hand. Further, any jobs should be simple tasks with no production quotas imposed.

(Tr. at 24.)

According to the ALJ, Plaintiff is unable to perform any of her past relevant work. (Tr. 27.) The ALJ determined that the plaintiff is an "individual closely approaching advanced age" at 46 years old as of the date last insured, has at least a

high school education, and is able to communicate in English, as those terms are defined by the regulations. (*Id.*) The ALJ determined that the "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (Tr. 27-28.) Because Plaintiff cannot perform the full range of light work, the ALJ enlisted a vocation expert ("VE") and used Medical-Vocational Rules as a guideline for finding that there are jobs in the national economy with a significant number of positions that Plaintiff is capable of performing, such as head hostess, usher, and fruit distributor. (Tr. 28.) The ALJ concluded his findings by stating that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from September 29, 2010, the alleged onset date, through September 30, 2010, the date last insured." (Tr. 29.)

## II.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v.*

*Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520. 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d

622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1989)).

## III.   Discussion

Plaintiff argues that the ALJ's decision should be reversed and remanded for three reasons: (1) the Appeals Council erroneously denied review by holding a Physical Capacities Questionnaire by Dr. Barbara Kopyta's, Plaintiff's primary treating physician, was not chronologically relevant, (2) the ALJ should have sought expert medical testimony to determine the onset date per SSR 83-20, and (3) that the ALJ decision was not based on substantial evidence when the questionnaire rejected by the Appeals Council is considered. (Doc. 11 at 3.)

### A.   Appeals Council Review

The Appeals Council did not err in declining to review the ALJ's determination that Ms. Gentry was not disabled between September 29, 2010, and September 30, 2010, as the new medical evidence proffered by Ms. Gentry was not chronologically relevant.

When reviewing the Appeals Council's refusal to review a DBI application, there are five bases upon which the claimant may be entitled to review. 20 C.F.R. §

404.970(a). When a plaintiff bases their right to review upon additional medical evidence not before the ALJ, the additional evidence must be "new, material, and chronologically relevant" to the period of purported disability. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) [hereinafter *Washington I*]. A failure of any of the three conditions means that the new evidence is not relevant and § 404.970(a)(5) does not entitle the claimant to review. The court reviews determination of novelty, materiality, and chronological relevance under a *de novo* standard. *Id.* at 1321.

New evidence is chronologically relevant if it "relates to the period on or before the date of the hearing decision." 20 C.F.R. § 404.970(a)(5). While the most obvious type of chronologically relevant evidence is records produced contemporary to the purported period of disability, "[m]edical opinions based on treatment that occurred after the date of the ALJ's decision may be chronologically relevant if they relate back to the relevant period. *Washington v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 871, 876 (11th Cir. 2019) [hereinafter *Washington II*]. The court further clarified that in *Washington I*, the backdated medical evidence was relevant because "(1) it was based on the claimant's description of his mental health symptoms during the relevant period, (2) the evaluating psychologist had reviewed the claimant's mental health treatment records from the relevant period, and (3) there was no

evidence of the claimant's mental health decline since the ALJ's decision." *Id.* Thus, the naked assertion that the new medical evidence on a backdated form relates to the relevant period is insufficient. In *Ring v. Soc. Sec. Admin., Comm'r*, the Eleventh Circuit considered such medical evidence to be irrelevant as it "did not discuss [the doctor's] findings in relation to [the plaintiff's] earlier medical records and treatment." 728 F. App'x 966, 969 (11th Cir. 2018). Further, evidence relating "to the worsening of a condition or the onset of a new condition" is not relevant. *Id.*

The evidence in this case is a physical capacities form completed by Dr. Kopyta on August 5, 2019, nearly nine years after the relevant period. (Tr. 16.) Dr. Kopyta opines that Plaintiff can sit upright in a standard chair or stand for less than 30 minutes at a time. (*Id.*) The form also indicates that Dr. Kopyta expected Plaintiff to be lying down, sleeping, or sitting with her legs propped up 4 hours out of an eight-hour day. (*Id.*) Dr. Kopyta also said that Plaintiff would be off task 100% of the time and would miss every day because she is "permanently and definitely totally disabled." (*Id.*) The conditions listed by Dr. Kopyta as causing these limitations include chronic liver cirrhosis, hypertension, hepatic encephalopathy, chronic fatigue syndrome, and hypothoyroidism. (*Id.*) The basis for Plaintiff's objection is

that Dr. Kopyta stated that Plaintiff's limitations existed back to September 29, 2010. (*Id.*)

In this evaluation form, the court is faced with a cursory medical questionnaire stating little more than certain limitations of Plaintiff, the conclusion that this classifies her as disabled, and the assertion that it relates back to the relevant time period. (Tr. 16.) There is no assertion on the questionnaire that it was based upon medical records going back to the relevant time, merely an assertion that limitations discussed on it existed during such time. (*See id.*) There is no discussion of the doctor's findings in relation to the earlier medical records. (*See id.*)

Of particular note as to the relevance of this document is the history of Ms. Gentry's cirrhosis. Though Ms. Gentry cited cirrhosis as the primary cause of her limitations at the ALJ hearing, Ms. Gentry also testified that she only developed cirrhosis following a surgery in 2013, three years after the alleged onset date of September 29, 2010. (Tr. 1147-48.)  In fact, a 2012 hepatic study confirmed that she still merely had fatty liver and not cirrhosis. (Tr. 693.) This history shows "the worsening of a condition or the onset of a new condition," as in *Ring*, not a condition present at or prior to the onset date as is required for chronological relevance. *Ring*,

728 F. App'x at 969. Thus, the medical questionnaire from August 2019 is not chronologically relevant.

As chronological relevance is a requirement for the new evidence to be considered by the Appeals Council under 20 C.F.R. § 404.970(a)(5), the August 2019 physical capabilities form is not sufficient for Appeals Council review under § 404.970(a). The Appeals Council did not err in refusing review as the new document is not chronologically relevant.

While Ms. Gentry emphasizes the brevity of the Appeals Council's refusal of her request for review, this is of no impact. In *Washington II*, the Eleventh Circuit stated "[i]t is sufficient, for example, for the Appeals Council to explain that new records were 'about a later time' and therefore did not relate to the ALJ's earlier decision." *Washington II*, 791 F. App'x at 876 (citing *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018)). Similar to the backdated physical capacities form in this case, *Washington II* concerned a denial of review by the Appeals Council on the basis of a backdated evaluation. In the case at bar, the Appeals Council did not err in finding that the backdated physical capacities form did not relate to the relevant time for the reasons stated above.

### B. Consultation of a Medical Expert

Plaintiff also contends that the ALJ erred in declining to consult expert medical testimony to determine a disability onset date for Ms. Gentry pursuant to Social Security Ruling ("SSR") 83-20. (Doc. 23-30.) The Court disagrees.

Plaintiff bases her argument on SSR 83-20, which instructs that "the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made." SSR 83-20, WL 31249 (Jan. 1, 1983), at *3. However, SSR 83-20 was rescinded on October 2, 2018, by SSR 18-01p and SSR 18-02p. SSR 18-01p (Oct. 2, 2018), WL 4945639, at *1. These new rules apply "to new applications filed on or after the applicable date of the SSR and to claims that are pending on and after the applicable date." *Id.* at *7; *see also Woodward v. Comm'r of Soc. Sec.*, No. 2:20-CV-417-NPM, 2021 WL 4438369, at *7 (M.D. Fla. Sept. 28, 2021) ("SSR 83-20 was rescinded and replaced on October 2, 2018 by SSR 18-1p and SSR 18-2p. Because the ALJ decision at issue is dated March 5, 2019, the new SSR applies even though Woodward applied for disability insurance benefits on January 19, 2012."). Plaintiff's claim was filed on July 25, 2017. (Tr. 20, 138.) However, the

ALJ did not issue his decision until June 18, 2019. Thus, Plaintiff's claim was still

pending at the time SSR 18-01p went into effect, and it applies to her case.

The relevant instruction in SSR 18-01p states

> At the hearing level of our administrative review process, if the ALJ needs to infer the date that the claimant first met the statutory definition of disability, he or she may call on the services of [a medical expert ("ME")] by soliciting testimony or requesting responses to written interrogatories .... The decision to call on the services of an ME is always at the ALJ's discretion. Neither the claimant nor his or her representative can require an ALJ to call on the services of an ME to assist in inferring the date that the claimant first met the statutory definition of disability.

SSR 18-01p, WL 31249 (Jan. 1, 1983), at *6. As the text of SSR 18-01p makes clear,

the ALJ *may* enlist the help of a medical expert in determining the onset date, but

this decision is firmly within the discretion of the ALJ. *Id.* The ALJ was under no

obligation to consult with a medical expert in making this determination, and

therefore, the ALJ did not err by failing to do so.

Moreover, this instruction in SSR 18-01p deals with an ALJ's determination

of the when the Plaintiff "first met the statutory definition of disability." *Id.* In this

case, however, the ALJ determined that Plaintiff was not disabled as of the date of

his decision, and therefore, he had no need to determine the date when Plaintiff first met the statutory definition for disability.

Plaintiff quotes extensively from *Bailey v. Colvin* in support of her argument that "in cases of ambiguous medical statements, the ALJ has the duty to seek clarification." 224 F. Supp.3d 1249, 1260-61 (N.D. Ala. 2016). In *Bailey*, the plaintiff had filed two applications with the Social Security Administration, one for SSI and another for Adult Child Disability Benefits ("DAC"), but both claims were related to her schizoid personality disorder diagnosis. *Id.* at 1252. The two applications were merged and heard by a single ALJ who approved the SSI claim upon determining that the plaintiff was disabled and denied the DAC claim. *Id.* The plaintiff's physician had recorded the plaintiff's schizoid personality disorder as beginning in "early adulthood." *Id.* at 1255. In particular, the ALJ found the phrase "early adulthood" to be too ambiguous to prove the onset date was prior to the plaintiff's twenty-second birthday. *Id.* The court in *Bailey* ruled that the ALJ had erred in not consulting the treating physician to clarify the meaning of "early adulthood." *Id.* at 1260-61.

Ms. Gentry makes great weight of the quote from *Bailey* where the court said "[i]n cases of ambiguous medical statements, the ALJ has the duty to seek clarification." *Id.* But *Bailey* is distinguishable for two reasons. First, the *Bailey* court

was applying the now rescinded SSR 83-20, which does not apply in the present case. *Id.* at 1254-61. Second, the court in *Bailey* was speaking in reference to ambiguity about the onset date of a disability that was known to exist, not to some alleged ambiguity as to whether there was a disability. *Id.* at 1252, 1258, 1260-21.

SSR 83-20 does not apply in this case, and the ALJ found Ms. Gentry to not be disabled. There is no ambiguity as to the onset of her disability because she was found not to be disabled. Thus, the ALJ made no legal error by exercising his discretion not to consult a medical expert to determine Ms. Gentry's onset date.

### C. Substantial Evidence to Support the ALJ's Decision

Finally, Ms. Gentry makes a perfunctory claim that once the additional evidentiary material submitted to the Appeals Council is taken into consideration, the determination of the ALJ does not meet the substantial evidence standard.

Having found above that the Appeals Council did not err in determining the new medical evidence to not be chronologically relevant, this review is constrained to the evidence before the ALJ. Plaintiff offers no other basis for asserting that the ALJ's decision was not based on substantial evidence. Nor does she assert that the ALJ's conclusion was not based on substantial evidence in the record available for consideration at the time of his decision. Having already rejected Plaintiff's

argument that the Appeals Council erred by refusing to consider Plaintiff's additional evidence, the Court finds Plaintiff's claim that the ALJ's decision was not based on substantial evidence to be without merit.

## IV.    Conclusion

Upon review of the administrative record, and considering all of Ms. Gentry's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and is in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** on March 17, 2022.

L. Scott Coogler
United States District Judge
206728

16